T.D. Knowles & Associates, PLLC
Zachary Bryant, WSBA No. 50423 (Appearing Pro Hac Vice)
zacb@tdklawgroup.com
1224 Harris Avenue, Suite 107
Bellingham, WA, 98225
Tel: 360-933-1612
Fax: 360-933-1664

JACK G. CAIRL (State Bar No. 105335) Local Counsel
LAW OFFICES OF JACK G. CAIRL, APC
Cairl@ikplaw.com
3460 Wilshire Blvd., 8th Floor
Los Angeles, CA 90010
(213) 427-2350 - Telephone
(213) 427-2366 – Facsimile
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANQIN WANG an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA INVESTMENT IMMIGRATION FUND, LLC, a California, a limited liability company, VICTORIA CHAN, an individual, HARRIS LAW GROUP, USA LLC, a California limited liability company, TAT CHAN, an individual, ZHENG CHANG, an individual, FANG ZENG, an individual, HARRIS GROUP, LP, and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE SECURITIES & EXCHANGE ACT OF 1934 [17 C.F.R. 240.10B-5];**<br>**2. INTENTIONAL MISREPRESENTATION;**<br>**3. FRAUDULENT CONCEALMENT;**<br>**4. NEGLIGENT MISREPRESENTATION;**<br>**5. BREACH OF FIDUCIARY DUTY;**<br>**6. CONVERSION; and**<br>**7. BREACH OF CONTRACT;**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT - 1

## JURISDICTION AND VENUE

1. Pursuant to 15 U.S.C. § 78a, the Court has jurisdiction over the claims for relief asserted herein which arise under and are brought pursuant to Sections 10(b) of the Securities and Exchange Act, 15 USC §78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the remaining claims for relief by virtue of diversity jurisdiction under 28 U.S. Code § 1332 and the Alien Tort Statute, 28 U.S. Code § 1350.

2. Venue in this District is proper under 28 U.S.C. §§ 1391(a) and (c) because a substantial part of the activities and events occurred within this district and the Defendants are conducting business, have principal office locations and/or are residents within this district.

## INTRODUCTION

3. Plaintiff is a foreign national who became the victim of a $50,000,000 securities fraud scheme in which the Defendants, primarily based in California, preyed on Chinese nationals who wished to leave China, to provide their families with the opportunities in the United States through the EB-5 program.

4. Pursuant to this scheme, Defendants absconded with the Plaintiff's $500,000 in Capital investment funds," and $40,000 in "administrative fees" by fraudulently inducing the Plaintiff to invest in a bogus enterprise created and maintained by Defendants, which Defendants misrepresented was a valid Los Angeles EB-5 real estate project.

5. Defendants orally and in writing represented to Plaintiff that his funds would be held in an escrow account and not disbursed unless and until Plaintiff's I-526 immigration petition was approved by the United States government. If Plaintiff's I-526 petitions was approved, Plaintiff's funds would then be used for the development costs of an EB-5 project that would create at least 10 full-time jobs for qualifying U.S. workers.

6. The truth was, however, that Plaintiff's funds were not held in the escrow account. Instead, contrary to the Defendants' written and oral representations, Plaintiff's funds were improperly transferred from the escrow account to other accounts owned or controlled by Defendant and spent for the personal pleasure of the Defendants. Defendants used Plaintiff's funds to purchase for themselves multiple real properties for their own personal use, luxury cars, and other accoutrements of a life of luxury.

7. None of Plaintiff's funds were ever used to develop the EB-5 project, and no jobs were created with Plaintiff's funds to date. Plaintiff is informed and believes that the Defendants fraud was so overwhelming and pervasive that a federal forensic account analyst could not determine where all the funds had been diverted by the Defendants.

8. Defendant California Investment Immigration Fund, LLC (hereinafter "CIIF"), is a California Limited Liability Company created, owned, operated, and managed by the Defendants in San Gabriel, CA, 91776. CIIF was designated by the United States Citizenship & Immigration Services ("USCIS") as a Regional Center authorized to sponsor EB-5 projects. Defendants fraudulently induced Plaintiff to contribute $500,000 of capital investment funds into various CIIF sponsored projects in exchange for an interest in a purported newly created commercial enterprise.

9. Defendant Victoria Chan is an individual residing in South El Monte, California, and on information and belief is the daughter of Defendants Tat Chan and Zheng Chang. Victoria Chan is an attorney licensed to practice law in the State of California and is engaged in the practice of law in the City of San Gabriel, California as a sole practitioner and owner of Defendant Harris Law Group USA, LLC ("Harris Law Group"). Victoria Chan obtained CIIF's Regional Center status, and participated in drafting Defendants' fraudulent documentation. Victoria Chan

further acted as the attorney for Plaintiff and filed several Form I-526's on his behalf and without his knowledge.

10. Defendant Tat Chan is an individual residing in the County of Los Angeles. Tat Chan has been in the immigration business since 1976 and has at all relevant times acted as the principal and general partner of CIIF. Upon information and belief, Tat was the criminal mastermind behind the CIIF regional center fraudulent scheme, and organized all the players and their respective roles. Tat and his accomplices made material, false representations to Plaintiff that induced him to provide and continue with his investments. Tat arranged to provide legal services for Plaintiff's EB-5 application through his daughter's company, Harris Law Group, USA, LLC, to further deceive Plaintiff, keep him ignorant of the true facts, and give him the false notion that his investments and actions were legitimate and legal. By providing Plaintiff with a California licensed attorney who was also a co-conspirator in the fraud, Defendants induced Plaintiff to sign Defendants' fraudulent documentation, and ensured that the non-English speaking Plaintiff and other investors would not hire independent counsel.

11. Defendant Zheng Chan is an individual residing in the county of Los Angeles and on information and belief is Victoria Chan's mother. Zheng Chan is believed to be residing in California. On information and belief, Zheng Chan, with knowledge of the falsity of Defendants' scheme, was active in promoting the false projects, deceiving Plaintiff and other investors, and perpetrating the scheme to defraud the Plaintiff.

12. On information and belief, Defendant Fang Zeng is a Chinese national residing in the State of California. On information and belief, Fang Zeng is a companion of Tat Chan and, with knowledge of the falsity of Defendants' scheme, was active in promoting the false projects, deceiving Plaintiff and other investors, and perpetrating the scheme to defraud the Plaintiff.

13. The above-named Defendants created, owned, operated and managed the companies listed below (some of which are now dissolved and some of which are still active) that were used as sham NCEs and/or otherwise used to defraud Plaintiff and other foreign investors. Defendants misrepresented to Plaintiff and other investors that the below companies would zealously represent them, or were companies that would act in good faith with investors involved in EB-5 or capital investment matters:

    a. Harris Law Group USA, LLC, 225 W Valley Blvd., Suite H118, San Gabriel, CA, 91776;

    b. California Investment Immigration Fund LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    c. California Investment Immigration Fund, LLC, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    d. CIIF Hotel Group LP, 126888 Chapman Avenue #3313, Garden Grove, CA, 92840;

    e. CIIF Investment Group LP, 12688 Chapman Avenue #3313, Garden Grove, CA, 92849;

    f. The Harris Group, LP, 225 West Valley Blvd., H118, San Gabriel, 91776;

    g. Harris Financial Group, LLC, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    h. Harris Franchise Group, LLC, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    i. Harris Construction Group, LLC, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    j. Harris Investment Immigration Fund, LLC, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    k.  Harris Development Group, LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    l.  The Harris Group, LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    m.  The Harris Group II, LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    n.  The Harris Group III, LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    o.  The Harris Group VIII LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776;

    p.  Harris Group X, LP, P.O. Box 1880 San Gabriel, CA, 91778;

    q.  The Harris Group XVIII LP, 225 West Valley Blvd., H118, San Gabriel, CA, 91776; and

    r.  American Immigration Center, Inc., 12688 Chapman Avenue, Unit 3313, Garden Grove, CA, 92840.

14. All corporations and other business entities used by the Defendants were alter-egos of Defendants and were used to conceal and further their fraudulent behavior. The corporations were used to create an "official" reputable appearing façade to perpetuate the fraud. A unity of interest and ownership exists between the entities and Defendants such that the separate identities of the corporation and the individual no longer exist, and if the acts of the entities are treated as those of the entities' alone, an inequitable result will follow.

15. The Defendants at all times acted as the agents, employees, or representatives of the above-named companies. The Defendants aided, abetted, cooperated with, and conspired with all other Defendants, to do the acts herein alleged. The Defendants acted with awareness and knowledge of their wrongdoing.

**Defendants' Fraudulent Schemes And**
**Unlawful Conduct**

16. Defendants' scheme targeted Plaintiff and other Chinese investors for whom English was not their first language and who wanted to obtain United States residency for themselves and their minor children. From 2012 through 2017, Defendants falsely promised Plaintiff that his payments to CIIF was a qualified investment in a valid CIIF sponsored EB-5 projects which would result in Plaintiff successfully obtaining a green card and receiving a substantial return of his investment. Defendants Victoria Chan and Tat Chan misrepresented to Plaintiff that his investment would be in a targeted employment area (TEA) and that the investment capital was being invested in a project that would be accepted by USCIS.

17. Defendants further materially misrepresented to Plaintiff, among other things, that: (i) Plaintiff's investment funds and fees would be refunded in the unlikely event his I-526 petitions was denied; (ii) Plaintiff's investment funds would be held in escrow until his I-526 petition was approved; (iii) upon approval of Plaintiff's petition, the investment funds would be exclusively used in the project associated with the new commercial enterprise ("NCE") which would create the necessary employment for EB-5 purposes; and (iv) what CIIF and the NCE were doing was permissible under United States law and policy.

18. Defendants misrepresentations and concealments were substantial factors in Plaintiff's decisions (1) to pay Defendants $500,000 in capital investment funds, plus $ $40,000 in administrative fees; (2) to hire Tat Chan as his advisor and retain Victoria Chan as his attorney to represent him and provide counsel throughout the EB-5 process. All Defendants shared in the financial gain of the misrepresentations.

19. The truth was that the Defendants had misappropriated and spent Plaintiff's money for their own personal use, no construction ever occurred for the

project in which Plaintiff invested, and no jobs were created with Plaintiff's funds. The Defendants concealed these facts from Plaintiff by lulling and bullying him, and by taking advantage of his ignorance of U.S. law. Whenever Plaintiff asked the Defendants about his EB-5 cases and investments, Defendants would mislead him and say that all was well with his money and the projects.

20. In addition, Defendants on several occasions forged Plaintiff's signature on U.S. Immigration forms to further perpetrate their fraud, keep the Plaintiff's immigration case ongoing, and maintain Plaintiff's ignorance. When the Plaintiff questioned or requested the return of his investment, he was deceived and lied to, and thereby further lulled, and as such falsely denied his rights to any rights to reimbursement.

21. As alleged by the United States of America in several civil forfeiture actions filed in this District against various properties acquired by Defendants with their stolen funds[1], and as stated in the April 4, 2017 FBI's sworn application for a search warrant in Case no. 8:17-MJ-00088, between January 2009 and August 2016, Defendants utilized at least 72 bank accounts to redirect and sequester more than $50,000,000 of the capital investment funds fraudulently acquired from more than 100 foreign Chinese nationals, including accounts at East West Bank, CTBC Bank, Bank of America, JPMorgan Chase Bank, Wells Fargo Bank, HSBC Bank, and Far East National Bank. According to the FBI, Defendants Tat Chan and Fang Zeng ("Zeng") were the signatories on most of the CIIF-related bank accounts, and "much of those funds originated from accounts in China and Hong Kong."

---

[1] Case Nos. 2:17-cv-03887-MWF-RAO, 2:17-cv-03901-DMG-PLA, 2:17-cv-03890-MWF-RAO, 2:17-cv-03895-MWF-RAO, 5:17-cv-01033-MWF-RAO, 5:17-cv-01030-MWF-RAO, 5:17-cv-01029-MWF-RAO, 5:17-cv-01031-BRO-PLA, and 5:17-cv-01034-MWF-RAO.

22. In addition, according to the US Government, since 2009 CIIF has improperly refunded more than $10,000,000 to EB-5 investors, but did not withdraw those investors' pending EB-5 petitions, even though those foreigners were no longer eligible for the EB-5 visa program because of the refunds.

23. From 2012 to 2017, Tat Chan and Victoria Chan fraudulently induced the Plaintiff to sign the following forms and documents:

   a. Form G-28, Notice of Entry of Appearance of Attorney;

   b. Form I-526, Immigration Petition by Alien Entrepreneur;

   c. An Irrevocable Limited Partnership Agreement;

   d. Fund Purchase Directions

   e. Irrevocable Subscription Agreement with CIIF;

   f. Irrevocable Investment and Fund Deposit Agreement;

   g. Escrow Agreement

   h. Management Services Agreement between CIIF and each Plaintiff, whereby the Plaintiff appointed CIIF to render advisory, consulting, and management services and required the management fee to be paid;

   k. Power of Attorney; and

   l. Personal Statement.

24. The documents were blank when executed and Plaintiff signed them not knowing that the Defendants could modify the document's terms after the execution by the Plaintiff. Although Plaintiff's attorney has made several requests to CIIF and Victoria Chan to provide the executed documents, Victoria Chan and CIIF have never provided the Plaintiff with copies of any of the documents or I-526 submission packages.

25. Plaintiff was given Defendants' misrepresentation, and presented with and signed the above documents starting in May of 2012.

26. Plaintiff's signatures on the above documents and his purchases of interests in purported projects sponsored by CIIF constituted sales of securities under Sections 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78c, 15 U.S.C. §78j(b), and 17 C.F.R. §240.10b-5.

27. To date, Plaintiff has not received or recovered any of his $500,000 investment, $40,000 administrative fee, or $20,000 in legal fees.

## Overview of the EB-5 Program

28. The Immigration and Nationality Act ("INA") sets aside visas to qualified foreign nationals who contribute to the economic growth of the United States by investing in U.S. businesses and creating jobs for U.S. workers. The employment-based fifth preference immigrant visa category (EB-5) was created by Congress for the benefit of the U.S. economy by providing an incentive for foreign capital investment that creates or preserves U.S. jobs.

29. In 1990, Congress created the Immigrant Investor Program, commonly known as "EB-5," in order to contribute to the U.S. economy through job creation and capital investment from immigrant investors by creating a new commercial enterprise ("NCE") or investing in a troubled business. 8 USC § 1153, "Allocation of immigration visas," controls the preference allocation for employment-based immigrants. Section 1153(b)(5), "Employment Creation," defines the EB-5 visa program. Part G ("Investors") of the recently published Volume 6 ("Immigrants") of the USCIS Policy Manual describes the specific rules applicable to the EB-5 program.

30. The INA authorizes approximately 10,000 EB-5 immigrant visas annually. The investment amount of $1,000,000 U.S. dollars per investor was established. However, to encourage investment in businesses located in areas or areas that would benefit the most benefit from employment creation, there is a set

aside of at least 3,000 of the approximately 10,000 EB-5 visas annually for those who invest in NCE's that create employment in targeted employment areas ("TEAs"), which include rural areas and areas with high unemployment.

31. There are 2 traditional paths for an EB-5 investor and their family to obtain permanent residency. The original direct path and the Regional Center path. Both require an investment of either $1,000,000, or $500,000 (if the investment is in a TEA) in an NCE located within the United States. The investor must invest his or her own capital, and that capital must be lawfully obtained. The immigrant investor must also document the lawful source of funds and the path of funds on how the investment was made and deposited.

32. Qualifying investments require the investor to actually place their capital contribution "at risk," which means that there must be a risk of loss and a chance for gain. Furthermore, if the investor is guaranteed the right to eventual ownership or use of a particular asset in consideration of the investor's contribution of capital into the NCE, the expected present value of the guaranteed ownership or use of such asset will count against the total amount of the investor's capital contribution in determining how much money was placed "at risk."

33. As part of the petition process, the investor must show that there is an actual undertaking of business activity. The mere act of forming or funding a NCE would be insufficient to show that an immigrant investor has placed his or her capital "at risk." As such, the investor must show actual business activity that shows the "at risk" nature of the investment.

34. The capital investment proceeds must be made available to the job creating enterprises (JCE's) responsible for creating the employment upon which the petition is based. In the most popular model, the Regional Center path, the investor must show an investment in the NCE and then that the funds are or will be made available to the JCE.

35. The investment, through the loan or investment of the NCE to a JCE (or NCE itself), must create or preserve ten full-time jobs for qualifying U.S. workers within two years (or within a reasonable time after the two-year period) of the immigrant investor's admission to the United States as a Conditional Permanent Resident. "Full-time employment" is defined as employment of a qualifying employee by the NCE in a position that requires a minimum of thirty-five working hours per week. A "qualifying employee" must be a U.S. citizen, a lawfully admitted permanent resident, or other immigrant lawfully authorized for employment in the United States including but not limited to a conditional resident, a temporary resident, an asylee, a refugee, or a foreign national remaining in the United States under suspension of deportation. The investor, immediate family member, or any non-immigrant will not count towards the definition of qualifying employee.

36. In the case of the Regional Center path, and in large part why it is a common and popular choice for investors, "full-time employment" can include employment of a qualifying employee in a position that has been created "indirectly" or induced from investments associated with the program. Indirectly created jobs are those created outside, collaterally, or as a result of capital invested in the NCE/JCE sponsored by the Regional Center. In order to demonstrate this, EB-5 business plans will rely on economists to produce a job creation report that use USCIS accepted methods and analyzes the expenditures, investment, geographical area, NAICS codes, etc. to determine how many indirect jobs are created as a result of the project.

37. Regional Centers are an economic unit, public or private, which is involved with the promotion of economic growth, improved regional productivity, job creation, and increased domestic capital investment. In order to obtain Regional Center (RC) designation, the organizers must show: (1) how the RC plans to focus on a geographical region within the United States, and must explain how

the RC will achieve economic growth within this regional area; that the RC's business plan can be relied upon as a viable business model; (3) how in verifiable detail (using economic models in most instances) jobs will be created directly or indirectly through capital investments made in accordance with the RC's business plan; and (4) the amount and source of capital committed to the project and the promotional efforts made and planned for the business project.

38. To obtain Lawful Permanent Residence (LPR), an investor must submit and have approved a Form I-526 petition. The current estimated adjudication times for a Form I-526 is twenty-two months, however in reality it is often longer than that. Once the Form I-526 is approved, the investor either seeks to adjust status (I-485) or goes through consular processing, to obtain their LPR. In order to do this a visa must be available to them at the time. When the Plaintiff in this case applied, there was no wait or significant wait times for visas to become available. However, given the popularity of the program, should he wish to re-apply at this point, he may be looking at an eight to ten year wait period for a visa to become available to them. After this, the LPR period is for 2 years. After 21 months, the investor and derivative family members must submit a Form I-829 requesting USCIS remove the conditions of the PR. In order to get approved, they must show that the investment was at risk and the jobs were created. The current processing times for a form I-829 is approximately 26-27 months.

**First Claim for Relief – Violations of the Securities & Exchange Act of 1934 and 17 C.F.R. 240.10b-5.**

(*Against All Defendants*)

39. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

40. The Defendants carried out a plan, scheme, and course of conduct that was intended to, and did, deceive the Plaintiff, and caused the Plaintiff to purchase securities.

41. The Defendants employed devices, schemes, and artifices to defraud the Plaintiff. The Defendants made untrue statements of material facts and omitted to state material facts that caused their statements to mislead the Plaintiff. The Defendants engaged in acts, practices, and a course of business which operated to defraud and deceive the Plaintiff, the purchasers of the securities.

42. As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, CIIF's sponsored projects appeared to be legitimate investment opportunities for foreigners seeking a path to United States residency via an EB-5 visa.

43. Plaintiff had no knowledge the securities were merely a façade for the Defendants criminal behavior. The Plaintiff invested his money and purchased a security and has suffered irreparable harm as a result of the fraud.

44. The Defendants have violated Section 10(b) of the Exchange Act 15 USC §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. As a direct and proximate result of the conduct of the Defendants, the Plaintiff suffered damages in connection with his respective purchases of a security in an offering sponsored by CIIF and managed by the Defendants.

**Second Claim for Relief – Intentional Misrepresentation**

(*Against Defendants Tat Chan and Victoria Chan*)

45. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

46. Defendants represented to Plaintiff, among other things alleged above, that Plaintiff's EB-5 petition would be successful, that the investments offered by Defendants would be made into an EB-5 project that was approvable, valid, and compliant with United States law and policy, and that Plaintiff's funds would be used only for such investments.

47. Defendants knew that their representations were false when they made the representations,

48. Defendants intended that Plaintiff rely on the misrepresentations.

49. Plaintiff reasonably relied on Defendants' misrepresentations.

50. Plaintiff was financially damaged as a proximate result of Defendants' misrepresentations.

51. Plaintiff's reliance on Defendants' misrepresentations was a substantial factor in causing Plaintiff to make his investments and pay his money to Defendants' and Defendants' entities.

52. As a direct result of the misrepresentation by the Defendants, Plaintiff suffered and continues to suffer emotional distress.

53. As a direct result of Defendants' misrepresentations, Plaintiff is entitled to damages in the form of a trust or lien on any and all property that the Defendants have in the United States, be it real property, bank accounts, automobiles, or any other property seized by the FBI, other federal agency, or as yet to be discovered.

### Third Claim for Relief – Fraudulent Concealment
#### (*Against Defendants Tat Chan and Victoria Chan*)

54. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

55. Defendants concealed certain information from Plaintiff as averred above, including that the investments offered by Defendants were invalid and non-compliant with United States law, and that Plaintiff's funds would be taken by Defendants and used for Defendants' personal purposes.

56. Defendants intentionally failed to disclose certain material facts to Plaintiff that were known only to Defendants and that Plaintiff could not have discovered. In addition, Defendants prevented Plaintiff from discovering certain material facts.

57. Plaintiff did not know the concealed facts.

58. Defendants intended to deceive Plaintiff by concealing the facts.

59. Had the omitted information been disclosed to Plaintiff, Plaintiff reasonably would have behaved differently.

60. Plaintiff was harmed thereby, and Defendants' concealment was a substantial factor in causing Plaintiff harm.

61. As a direct result of the misrepresentation by the Defendants, Plaintiff suffered and continues to suffer emotional distress.

62. As a direct result of Defendants' misrepresentations, Plaintiff is entitled to damages in the form of a trust or lien on all property that the Defendants have in the United States, be it real property, bank accounts, automobiles, or any other property seized by the FBI, other federal agency, or as yet to be discovered.

**Fourth Claim for Relief – Negligent Misrepresentation**

(*Against Defendants Tat Chan and Victoria Chan*)

63. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

64. Defendants represented to Plaintiff, among other things alleged above, that Plaintiff's EB-5 petition would be successful, that the investments offered by Defendants would be made into a EB-5 project that that was approvable, valid, and compliant with United States law and policy, and that Plaintiff funds would be used only for such investments.

65. Defendants' representations were not true.

66. That although it is possible that Defendants may have believed that the representations were true, they had no reasonable grounds for believing the representations were true when they made them.

67. Defendants intended that Plaintiff rely on the representations.

68. Plaintiff reasonably relied on Defendants' misrepresentations.

69. Plaintiff was harmed thereby, and Defendants' concealment was a substantial factor in causing Plaintiff's harm.

70. Plaintiff's reliance on Defendants' misrepresentations was a substantial factor in causing Plaintiff to make his investments and pay his money to Defendants' and Defendants' entities.

### Fifth Claim for Relief – Breach of Fiduciary Duty
### (*against Defendant Victoria Chan*)

71. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

72. Defendant Victoria Chan represented Plaintiff as his attorney, and at all times Defendant Victoria Chan owed the Plaintiff a fiduciary duty which imposed upon her the highest standard of scrupulous care and loyalty under the law. Ms. Chan was required always to act in Plaintiff's best interests, and to refrain from doing anything that would injure or deprive him of profit or advantage, and all the while subordinate her own personal interests to those of Plaintiff. In addition, Defendant Victoria Chan had a duty to refrain from misleading Plaintiff, and to manage properly his investment capital and ensure CIIF's EB-5 projects proceeded appropriately.

73. Defendant Victoria Chan averred actions constitute repeated knowing and intentional breaches of her fiduciary duty to Plaintiff.

74. Plaintiff was damaged by Defendant Victoria Chan's breaches of fiduciary duty, including emotional damages caused by Defendants' despicable conduct.

75. Ms. Chan's breaches of fiduciary duty were committed with recklessness, oppression, fraud, or malice, and justify an award of punitive damages.

### Sixth Claim for Relief – Conversion
### (*against All Defendants*)

76. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

77. Based upon *inter alia* the PPO and related documents that Plaintiff signed, the Plaintiff had a right of ownership and a right to possession of the specific, identifiable sum of $540,000 that he invested with Defendants, plus $20,000 in legal fees where noted above.

78. Defendants committed unwarranted interference with Plaintiff's dominion over his property, and Defendants wrongfully took possession of Plaintiff's property. The Defendants either committed or aided and abetted the Defendants' unlawful actions, and/or are otherwise unlawfully in possession of Plaintiff's property.

79. Plaintiff has been damaged as a result of Defendants' wrongful acts. As a direct result of the conversion by the Defendants, Plaintiff incurred special damages in an amount to be determined.

80. As a direct result of the conversion by the Defendants, Plaintiff suffered and continues to suffer emotional distress.

81. As a direct result of the conversion by the Defendants, Plaintiff is entitled to damages in the form of a trust or lien on any and all property that the Defendants have in the United States, be it Real Property, Bank Accounts, Automobiles, or any other property seized by the FBI, other federal agency, or as yet to be discovered.

### Seventh Claim for Relief – Breach of Contract
(*against Defendants Tat Chan, Victoria Chan, CIIF, and The Harris Group, LP*)

82. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 38 as if fully stated fully herein.

83. Plaintiff and Defendants entered into written agreements in the form of the PPO and related documents under which Defendants agreed, *inter alia*, to provide Plaintiff with legal services and invest Plaintiff's capital in a described EB-5 compliant project.

84. The Defendants breached the agreements by failing to provide proper legal services and failing to invest Plaintiff's funds into a legitimate EB-5 project.

85. As a result of the breach of contract, the Plaintiff's capital investment was not invested in the EB-5 project promised, and Plaintiff has lost the entirety of his investment amount and stands to not be able to recoup his money due to the pending United States civil forfeiture cases against the Real Property assets of the Defendants.

86. In addition, as a result of Defendants' breach of contract, Plaintiff stands to potentially be denied his Form I-526 Petition for a US Immigration visa, or his "priority date" (place in line) for a US Immigrant visa because the I-526 applications will no longer be approvable. The Plaintiff has and continues to suffer irreparable emotional, mental, and financial harm as a result.

87. As a direct result of the breach of contract by the Defendants, Plaintiff is entitled to damages in the form of a trust or lien on any and all property that the Defendants have in the United States, be it Real Property, Bank Accounts, Automobiles, or any other property seized by the FBI, other federal agency, or as yet to be discovered.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. For a preliminary and permanent injunction restraining Defendants, relatives, family members, servants, employees and attorneys, and those persons in active concert or participation with them or who have received or retained any of the proceeds who receive actual notice of the injunction from disposing of or secreting any proceeds of the alleged illegal activity, from disposing of or secreting any assets that may reasonably contain or be proceeds of the alleged illegal activity, from disposing of or secreting any property or real property that may reasonably have been purchased with proceeds of the alleged illegal activity and, further, from impairing, transferring, disposing, or otherwise diminishing the value

of any such property, or from stripping the equity of such property via mortgages or otherwise.

    2. For an order freezing any accounts in which Defendants and/or any entity they own and/or control has an interest, and impose by temporary and permanent injunctive relief a constructive trust upon the proceeds Defendants illegal conduct and grant Plaintiff such other and further relief which may be appropriate under the circumstances.

    3. For a trust or lien on any and all property that the Defendants have in the United States, be it Real Property, Bank Accounts, Automobiles, or any other property seized by the FBI, other federal agency, or as yet to be discovered.

    4. For judgment against all Defendants, for damages, punitive damages, costs, interest, prejudgment interest, and such other and further relief which is necessary and just in the circumstances because of the Defendants' wrongful acts.

    5. For general damages and punitive damages against Defendants in an amount that is no less than $1,800,000, special damages of $560,000 (the $500,000 capital interest, $40,000 administrative fee, and $20,000 legal fees), injunctive relief, interest, cost, attorneys' fees, and such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

    Plaintiff hereby demands a trial by jury.

DATED:  December 12, 2017

    T.D. Knowles & Associates, PLLC

    LAW OFFICES JACK G. CAIRL, APC


    By:    /s/ Jack G. Cairl
           Jack G. Cairl
           Attorneys for Plaintiff